# Richmond

## Allstate Insurance Company v. Commonwealth of Virginia, Et Al.

October 14, 1957.

Record No. 4686.

Present, All the Justices.

The opinion states the case.

*Walter E. Rogers (George H. Kline; Donald L. Schaffer; Fielding*

*L. Williams; George R. Humrickhouse; Williams, Mullen, Pollard & Rogers*, on brief), for the appellant.

*C. F. Hicks, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth; *Claude D. Minor (Collins Denny, Jr.; Denny, Valentine & Davenport*, on brief), for appellee, Virginia Insurance Rating Bureau.

EGGLESTON, J., delivered the opinion of the court.

 Since 1948 every insurance company operating in this State and writing comprehensive, fire, theft, collision and physical damage insurance on automobiles, has been required to be a member of the Virginia Insurance Rating Bureau, hereinafter referred to as the Bureau. The Bureau is required to file with the State Corporation Commission manual, minimum, class rates, rating schedules or rating plans relating to such insurance in this State and all insurers are required to adhere to such filings, except that with approval of the Commission they may deviate therefrom in certain respects.[1]

From October, 1948, until January, 1956, the Commission had approved a rate schedule filed by the Bureau for collision insurance upon all private passenger automobiles based on a single classification and without regard to the nature of their use.

In January, 1956, the Bureau filed with the Commission a schedule for (1) comprehensive, fire, theft and related coverages (except towing) on private passenger automobiles, (2) all coverages on commercial vehicles, and (3) collision insurance on private passenger automobiles. Under this plan different rates were to be charged for collision insurance on private automobiles according to the general nature of their use. A different rate was to be charged for a private car used for business and one not so used. A different rate was to be charged for an automobile with a male operator under twenty-five years of age and one with a male operator over such age. This basis of classification and the relevant rates were approved by the Commission and resulted in these three classifications for collision insurance on privately owned passenger automobiles:

Class (1)—Nonbusiness use with no male operator under twenty-five years of age;

---

[1] Acts 1948, ch. 402, p. 791; Michie's Code, 1948 Cum. Supp., § 4314(19) *ff.*; Code of 1950, § 38-194 *ff.*; Acts 1952, ch. 317, p. 471; Code, 1952 Cum. Supp., § 38.1-225 *ff.*

Class (2)—Business and nonbusiness use with a male operator under twenty-five years of age;

Class (3)—Business use with no male operator under twenty-five years of age.

Within a day or two after this plan had been approved Allstate Insurance Company, hereinafter called Allstate, filed with the Bureau its request for approval by the Commission of certain deviations downward from, or reductions in, the rates specified in the approved plan, stated thus:

"As respects Comprehensive, Fire, Theft and related coverages (but not including Towing) applicable to private passenger automobiles we wish to continue our present 10% deviation for all classes and coverages.

"As respects all coverages applicable to commercial automobiles we wish to increase our present deviation from 10% to 20% for all classes and coverages.

"As respects Collision coverage applicable to private passenger automobiles we wish to amend our present deviations, by class, as set forth below."

With respect to collision coverages on private passenger automobiles, Allstate requested that it be permitted to subdivide Classes (1) and (3) above, as approved by the Commission, with these deductions in the schedule rates:

Class (1)—Nonbusiness use with no male operator under twenty-five years of age:

 (a) Used to and from work, with estimated annual mileage,
 1. Over 7,500 miles, deviation of 15% in rate;
 2. Under 7,500 miles, deviation of 23.5% in rate.
 (b) Used for pleasure only, with estimated annual mileage,
 1. Over 7,500 miles, deviation of 25% in rate;
 2. Under 7,500 miles, deviation of 32.5% in rate.

Class (3)—Business use with no male operator under twenty-five years of age, with estimated annual mileage,
 1. Over 7,500 miles, deviation of 20% in rate;
 2. Under 7,500 miles, deviation of 28% in rate.

In its request Allstate pointed out that from October 18, 1948, until approval of the new rates, under various administrative orders the Commission had permitted this classification with resulting deviations in Allstate's rates on collision insurance on privately owned automobiles.

The Bureau did not oppose the requested deviations on comprehensive, fire, theft and related coverages, or coverages applicable to commercial automobiles. But it opposed the requested deviations from the approved schedule for collision coverage on private passenger cars.

After hearing the matter, the Commission entered an order granting the requested deviations for comprehensive, fire, theft and related coverages and coverages on commercial automobiles. The order also provided that because of its lower than average expense ratio, Allstate should be permitted to deviate 17½% from the manual rates established for collision insurance. However, the order denied Allstate's request that it be permitted a further deviation by the proposed subdivision of Classes (1) and (3). From so much of the order as denied such latter request Allstate has appealed of right to this court.

The evidence before the Commission on Allstate's request for deviations from the approved schedule, here at issue, is quite brief. Allstate offered a single witness who testified that according to data collected from the experience of that company it was justified in making the classifications under which it had been permitted by the Commission to operate from October, 1948, to January, 1956. This experience showed, the witness said, that privately owned passenger cars which were driven to and from work had a higher frequency of accidents than those driven for pleasure only. He also testified that according to Allstate's experience, cars which had been insured upon the basis of the owners' estimates that they would be driven over 7,500 miles per year had a higher frequency of accidents than those which had been insured upon the owners' estimates that they would be driven less than that annual mileage. The witness further testified that for the years 1953, 1954 and 1955 the loss ratio on rates charged according to the proposed deviations would have been approximately the same as Allstate's national average.

The Bureau offered no evidence in opposition to Allstate's request. But in its written opinion the Commission pointed out that the plan filed by the Bureau and approved in January, 1956, had been "established and based upon the experience of all companies after a careful study by the Commission of changing conditions and the needs of the insuring public which began in early 1951" and ended shortly before the plan was filed. None of the data there referred to is incorporated in the present record. Nor is the soundness of the Commission's conclusion in adopting that plan challenged.

In substance, Allstate's position is that from its own experience it concludes that its proposed plan is sound, that such plan will result in a substantial reduction in the premiums on insurance written by it as compared with premiums which it would have to charge under the plan approved by the Commission, and that it should be allowed to pass this saving on to the public. The issue is not so simple.

It will be observed that Allstate does not here propose that it be allowed to deviate downward from the rates prescribed by the Commission by charging a smaller premium for collision coverages under Classes (1) and (3) as established by the Commission. It was permitted such a deviation in rates for comprehensive, fire, theft and related coverages on private passenger cars and on all coverages on commercial vehicles. It was also permitted a 17½% deviation on its collision rates. But here it proposes to effect a further reduction in its premium charges on Classes (1) and (3) by subdividing or reclassifying them according to whether such cars are used in going to and from work, and whether their estimated annual mileage is over or under 7,500 miles. In short, it proposes to set up a different classification within the classes fixed by the Commission.

In its brief the Bureau contends that such a proposed deviation is not "a uniform deviation from the class rates, rating schedules, rating plans or rules respecting any kind of insurance, or class of risk within a kind of insurance," as is permitted in § 38.1-258. However, the Commission did not base its decision on this point, nor are we called upon to decide it.

As we interpret the written opinion of the Commission, it denied the request of Allstate on the grounds that,

(1) The plan which the Commission approved in January, 1956, was established after a long and careful study of the experience of all insurers which write this class of insurance; that this plan is based upon "the use generally made by the public of private passenger automobiles and is readily usable by all companies," and is so used by all; and that such plan "distributes the total cost of insurance equitably among all policyholders;"

(2) All companies should be required to use the same general classification which has been established; that there are 340 insurers writing this class of insurance in this State and to permit each to set up its own classification would "lead to confusion and a breakdown of effective regulation" of rates;

(3) The proposed plan of Allstate is not shown to be sound and

proper because it is based upon its experience alone and not upon the experience of all companies writing this class of insurance;

(4) The proposed plan of Allstate is unsound because it is based in part upon the premise that a car driven more than 7,500 miles per year has a greater risk exposure than one driven less than that mileage. Yet Allstate's statistical data is not based upon the distance which the insured car is actually driven. It is based upon the mere estimate of the prospective policyholder as to how far his car will be driven during the next year, without any verification as to whether such estimate is true or false.[2]

Whether the holding of the Commission in denying the requested deviation should be sustained depends upon the interpretation and application of the provisions for the regulation of insurance coverage rates found in Code, 1952 Cum. Supp., § 38.1-218 ff.

Section 38.1-218 states that the purpose of the statute authorizing the regulation of insurance rates "is to promote the public welfare" to the end that such rates "shall not be excessive, inadequate, or unfairly discriminatory, and to authorize and regulate co-operative action among insurers in rate making." The section continues: "Nothing in this chapter is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit or encourage, except to the extent necessary to accomplish the purposes mentioned above, uniformity in insurance rates, rating systems and rating plans or practices. The provisions of this chapter shall be liberally interpreted to make effective the purpose thereof as outlined in this section."

Section 38.1-226 provides for the continuance of the Bureau under the supervision of the Commission "for the purpose of making or adopting rates for insurance." All insurers are required to be members of the Bureau (§ 38.1-227) which files manual, minimum, class rates, rating schedules or rating plans on behalf of all members. Section 38.1-232.

Section 38.1-235 provides for an appeal to the Commission by a member from such action of the Bureau.

The standards for rate regulation are laid down in § 38.1-252, which reads in part as follows:

---

[2] Thus, under Allstate's proposed plan, a prospective policyholder who tells the insurance salesman that he expects to drive his car less than 7,500 miles per year, but actually drives in excess of that mileage, would be entitled to a smaller premium than one who tells the salesman that he expects to drive more than 7,500 miles per year and actually drives less than that mileage.

"(1) Rates shall not be excessive, inadequate or unfairly discriminatory;

* * * * * * *

"(3) Due consideration shall be given to past and prospective loss experience within and outside this State, * * * to a reasonable margin for underwriting profit and contingencies, * * * to past and prospective expenses both countrywide and those especially applicable to this State, and to all relevant factors within and outside this State; * * *;

"4) * * * (a) the system of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or groups of insurers to reflect the requirements of the operating methods of any such insurer or group with respect to any kind of insurance, * * *; and (b) risks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. * * *"

The filings by the Bureau must be approved by the Commission before they are used. Section 38.1-253.

Section 38.1-258 reads in part as follows:

"*Adherence to filings made by Bureau or rating organization; deviations.*—(1) Every member of the Virginia Insurance Rating Bureau, as provided for in article 2 of this chapter, and every member of or subscriber to a rating organization, as provided for in article 3 of this chapter, shall adhere to the filings made on its behalf by the Bureau or by such rating organization, except that:

"(a) As to the kinds of insurance to which article 2 applies, and as to the kinds of insurance to which paragraphs (15), (16) and (17) of § 38.1-240 apply, any such insurer may make written application to the Commission for permission to file and use a uniform deviation from the class rates, rating schedules, rating plans or rules respecting any kind of insurance, or class of risk within a kind of insurance, or combination thereof. Such application shall specify the basis for the deviation and shall be accompanied by supporting data upon which the application relies. A copy of the application and data shall be sent simultaneously to such rating organization; pro-

vided, however, that if the application for any such deviation or modification is with respect to insurance regulated exclusively under article 2 of this chapter, the written application as provided for above shall be made to the Commission through the Virginia Insurance Rating Bureau. In considering the application for permission to file and use such uniform deviation, the Commission shall give consideration to all available statistics and the principles of rate making as provided in this article; and

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(2) The Commission shall set a time and place for a hearing at which the applicant insurer and the Bureau or such rating organization may be heard, and shall give them not less than ten days' written notice thereof. In the event the Commission is advised by the Bureau or such rating organization that it does not desire a hearing, the Commission may, upon the consent of the applicant, waive such hearing.

"The Commission shall issue an order permitting the uniform deviation or modification for such insurer to be filed and used if it is found to be justified. The Commission shall issue an order denying such application if it finds that the deviation or modification is not justified or that the resulting premiums would be excessive, inadequate or unfairly discriminatory."

Allstate argues that under § 38.1-252, prescribing the standard for making rates, the prime consideration is that "rates shall not be excessive, inadequate or unfairly discriminatory," and that there is no requirement for uniformity of rates among insurers, or that all must adhere to a single classification.

It is true that there is no express statutory requirement for uniformity of rates or classification. Moreover, the very process of permitting deviations authorized under § 38.1-258, contemplates that there may be differences of classifications within the limitations therein specified. But the fact that the Bureau is required to make certain filings (§ 38.1-226), that they are deemed to be filed on behalf of all of its members (§ 38.1-232), and that all members must, except for permitted deviations, adhere to such filings (§ 38.1-258), contemplates that generally speaking the classifications will be uniform. Certainly, there is no requirement that the Commission must grant every deviation which any insurer may request.

Section 38.1-258 provides for a hearing by the Commission of a request for a deviation. In determining the matter the Commission is given broad authority. The section provides that the Commission shall issue an order permitting the deviation "if it is found to be justified." Conversely, it shall issue an order denying such application "if it finds that the deviation or modification is not justified *or* that the resulting premiums would be excessive, inadequate or unfairly discriminatory." (Emphasis added.) Thus the authority of the Commission to deny the request is in the alternative. It is not limited in its denial to the finding that the resulting premiums would be excessive, inadequate or unfairly discriminatory, as Allstate seems to think. The Commission may base its conclusion upon the finding that under the evidence adduced the requested deviation is not justified.

In the hearing on the request for such deviation the burden is, of course, on the applicant.

In reaching its conclusion with respect to a requested deviation the Commission must bear in mind the provisions of § 38.1-252 governing the making of rates. That statute, in addition to the requirement that "Rates shall not be excessive, inadequate or unfairly discriminatory," provides that "Due consideration shall be given to past and prospective loss experience within and outside this State," "to past and prospective expenses both countrywide and those specially applicable to this State, and to all relevant factors within and outside this State."

The opinion of the Commission shows that in passing upon the requested deviation it complied with the mandates of these statutes. It found that such deviation was "not justified." It aptly said: "It must be recognized that in establishing a plan for classifying private passenger automobiles for collision insurance the Commission must exercise its best judgment based upon the facts before it and its experience in regulating insurance."

Allstate argues that since it had been permitted for a number of years under the administrative orders of the Commission to use this classification, it should be permitted to continue such use. But, as the Commission points out in its opinion, this permission was granted Allstate while the classification plan later approved was under investigation and consideration. During its investigation the Commission became convinced that Allstate's plan was not sound and should not be permitted by way of deviation.

In *Aetna Insurance Co.* v. *Commonwealth*, 160 Va. 698, 719, 169 S. E. 859, we pointed out that in reviewing the action of the Commission in framing insurance rates, "this court will not disturb the action of the Commission unless it appears that the Commission has exceeded its constitutional or statutory powers; or that its action has resulted from an unreasonable exercise of its authority; or that it is based upon a mistake of law, or is contrary to the evidence or without evidence to support it."

When the record before us is viewed in the light of these principles we are of opinion that the order here complained of should be affirmed. It is so ordered.

*Affirmed.*